Johnson J.
delivered the opinion of the Court.
The plaintiff’s declaration contains two counts in assumpsit. The first, charges, that in consideration, that the plaintiff would sell to the defendant a certain slave, called William, of the value of $800 at the low price of $400, the defendant would take and carry, or cause to be taken and carried, the said slave beyond the limits of this State, so that he, said slave should not be brought back or permitted to return to the said State, or be suffered thereafter to remain or dwell within the said State. Then f0]]0Wg an averment, that confiding in the promise and *151 undertaking of defendant, the plaintiff did sell the said slave to defendant at the low price aforesaid— Breach — “That defendant hath not yet taken and carried, or caused the said slave to be taken and carried out of, and beyond the limits of the said State, according to the true intent and meaning of his promise and undertaking aforesaid.” In the second count the matter of inducement is set out in the same manner as in the first, and the contract set out, is, that defendant promised “that the said slave William, should be taken out of the State,” and the breach assigned is, “that the said slave William, hath not been taken out of the said State according to the true intent and meaning of defendant’s undertaking.” At the time of the sale, the plaintiff executed to defendant, a bill of sale for William, on which the consideration expressed is $400, and in connection with the bargain and sale the following is inserted viz: “the said slave, William to be taken out of the State.” From the parol evidence, it appears that defendant had been offered $500 for William, if he would sell him without a condition that he should be carried out of the State, and the witness said, that without it, he would have bro uglit $600. But the defendant sold him for $450 to one Fincent, who bought him for, andón account of Mr. St. John of Augusta Georgia, and the bill of sale from defendant was to St. John, but it contains no stipulation that he should be carried out of the State. William was immediately sent to St. John, who said he did not conceive himself bound to keep him out of the State, and sent him back, and Vincent, his agent bought him, and keeps him here. It did not appear that defendant had any knowledge of, or concurred in St. John’s sending him back. The jury found the following verdict: “The jury are of opinion that the defendant did not use precautionary measures to prevent the return of the said negro into the State, and therefore find for the plaintiff one hundred dollars damages.” Contracts of this soft are not unusual. The owners of slaves frequently send them off’ from amongst their kindred and associates as a punishment, and it is *152 frequently resorted to, as the means of separating a vicious negro from amongst others exposed to be influ-eneed and corrupted by his example. It is therefore common, to require of the purchaser of such a negro, that he shall carry him out of the State. In such a contract, there is nothing immoral, impolitic or illegal, and when, as in this case, it is founded on a valuable consideration, there can be no doubt that it is binding. The demurrer cannot therefore be sustained.
This contract, although very inartificially expressed, imports, I think, pretty clearly, not only that the defendant had agreed to carry the negro out of the State, but when construed with reference to the usage of the country, implies a further undertaking, that he should be domiciliated out of the State. That'' he would, in good faith, carry or send him out of the State, and sell or employ him there, as the means of preventing his return. But it would be straining construction too far, to imply an undertaking that he should never be brought back, or return. The difficulty of performing such a condition, is, of itself, a sufficient consideration for not raising it by implication. But the very object of such a stipulation as this, would be defeated, if it could be satisfied by merely carrying him beyond the boundary of the State, with the intention of bringing him back, or with the knowledge that he would return. If that would have sufficed, the defendant would have easily satisfied the undertaking, by sending him to sea for a few houi's, and bringing him back immediately.— Such an interpretation of this agreement, would be an obvious violation of the understanding and intention of both the parties.
The motions for nonsuit and new trial, depend, therefore, upon the question, whether, in point of fact, the defendant has broken his contract, and to ■what extent the plaintiff has been damnified.
The defendant did not, himself, carry William out of the State, and he relies on his sale to St. John, as proof of his having performed his agreement, because he (St. John) lived out of the State, and because the negro was carried to Augusta.
Yeadon, for the motion.
Holmes, contra.
Having confided the carrying of the negro out of the State, to St. John, or rather to his agent Yineent, the defendant made him his agent, for that purpose, and is responsible for the manner in which he executed the contract. And with respect to St. John, the evidence is clear that he acted upon the principle, that the contract was satisfied by his being carried beyond the boundary of the State. He sent him immediately back, and the circumstances would have well warranted the jury in concluding that the whole was a mere contrivance on the part of Vincent, to get the negro and keep him here at a low priee, in the very teeth of defendant’s contract with the plaintiff, and fully sustains their verdict. The damages are precisely what the plaintiff sacrificed on account of annexing the condition to the sale, and cannot be considered as excessive, even if that was regarded as a sufficient gimind of appeal.
Motion dismissed,
O’Neall & Harper Js. concurred.